# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SUN MICROSYSTEMS, INC., )
)
          Plaintiff, )
)
    v. )
)   CIVIL ACTION NO. 07-782-JJF
VERSATA ENTERPRISES, INC., )
VERSATA SOFTWARE, INC., )
VERSATA DEVELOPMENT GROUP, INC., )
VERSATA COMPUTER INDUSTRY )
SOLUTIONS, INC., VERSATA, INC., )
TRILOGY, INC., and NEXTANCE, INC., )
)
          Defendants. )
)

---

## PLAINTIFF SUN MICROSYSTEMS, INC.'S
## OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS DEFENDANTS' NON-PATENT COUNTERCLAIMS

Paul J. Lockwood (Del. I.D. No. 3369)
Michael A. Barlow (Del. I.D. No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
Tel:    (302) 651-3000
Fax:    (302) 651-3001
E-mail: Paul.Lockwood@skadden.com
          Michael.Barlow@skadden.com
Attorneys for Plaintiff
Sun Microsystems, Inc.

OF COUNSEL:

Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301

DATED: April 18, 2008

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

II.   SUMMARY OF ARGUMENT ...................................................................1

III.  STATEMENT OF FACTS ........................................................................3

IV.   ARGUMENT ...........................................................................................3

    A.    Applicable Legal Standard ....................................................................4

    B.    Versata's Non-Patent Counterclaims Must be Dismissed Because
        Versata Has Failed to Allege Facts Sufficient to State a Claim ...............5

        1.    Versata's Antitrust Counterclaims Must be Dismissed
            Because Versata Has Failed to Plead Facts Essential to
            Core Elements of an Antitrust Claim .........................................6

            (a)    Versata fails to allege facts sufficient to satisfy the
                  "monopoly power" elements of its antitrust claims. .........7

            (b)    Versata fails to allege facts necessary to state the
                  existence of a relevant market. ....................................10

            (c)    Versata fails to address additional essential
                  elements of an antitrust claim. ....................................11

            2.    Versata's Misrepresentation Counterclaims Must be
            Dismissed Because Versata Failed to Allege Facts
            Sufficient to Show a Misrepresentation or a Duty to
            Disclose any Alleged Omissions ...............................................12

            (a)    Versata fails to allege any misrepresentation by Sun .....13

            (b)    Versata has not and cannot allege facts establishing
                  a duty speak as required to state a claim for material
                  omission. ...................................................................14

            3.    Versata's Unfair Competition Claims Must be Dismissed
            Because Versata Failed to Plead Facts Sufficient to Show
            that Sun Committed an Unlawful, Unfair, or Fraudulent Act.....16

    C.    At a Minimum, Versata's Non-Patent Counterclaims Should be
        Stayed Because Many are Predicated on Resolution of Underlying
        Patent Issues ........................................................................................19

V.    CONCLUSION .......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Barr Labs., Inc. v. Abbott Labs.*,
  978 F.2d 98 (3d Cir. 1992) .......................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (May 21, 2007) .................................................... 5, 8, 9, 21

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001) ................................................................. 13, 14

*Broadcom Corp. v. Qualcomm, Inc.*,
  501 F.3d 297 (3d Cir. 2007) ............................................................. *passim*

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) .................................................................. 21

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (Cal. 1999) .............................................................. 17, 187

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*,
  159 F.3d 129 (3d Cir. 1998) ......................................................... 7, 11, 12

*Enzo Life Sciences, Inc. v. Digene Corp.*,
  2003 U.S. Dist. LEXIS 10202 (D. Del. June 10, 2003) ........................ 19, 21

*Gaffin v. Teledyne, Inc.*,
  611 A.2d 467 (Del. 1992) ......................................................................... 12

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
  423 F.3d 374 (3d Cir. 2005) ............................................................. 7, 9, 11

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986) .................................................... 19, 20, 21

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (Cal. Ct. App. 2007) ........................................ 13, 14

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) ...................................................................... 5

*Matthews Office Designs, Inc. v. Taub Invs.*,
  1994 Del. LEXIS 182 (Del. May 25, 1994) ......................................... 12, 14

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) .................................................................. 4, 5

*Neomagic Corp. v. Trident Microsystems, Inc.*,
   2001 U.S. Dist. LEXIS 14585 (D. Del. Sept. 7, 2001) ............................................... 20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ........................................................................... 7, 10, 11

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007)......................................................................... 18

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .................................................................................... 17

*Turbe v. Gov't of the Virgin Is.*,
   938 F.2d 427 (3d Cir. 1991). ........................................................................................ 4

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ...................................................................................................... 7

## Statutes

15 U.S.C. § 2 (2007) ....................................................................................................... 5, 6

Cal. Bus. & Prof. Code § 17200, *et seq.* (West 1997 & Supp. 2008) ........................... 16

Cal. Civ. Code § 1710 (West 1997 & Supp. 2007)................................................. 13, 14

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4

Fed. R. Civ. P. 12(h)(2)(B).................................................................................................. 4

Fed. R. Civ. P. 42(b) ....................................................................................................... 19

## Other Authorities

Restatement Second of Torts § 551(a) ............................................................... 13, 14, 15

Robert Pitofsky, *New Definitions of Relevant Market and the
   Assault on Antitrust*, 90 Colum. L. Rev. 1805 (1990)................................................. 6

Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705 (2000)....................... 21

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Sun Microsystems, Inc. ("Sun") brought this suit against Defendants Versata Enterprises, Inc., *et al.* (collectively "Versata") alleging infringement of four United States patents on November 30, 2007.    Versata filed an Answer and Counterclaims, including five non-patent counterclaims, on January 25, 2008.  Sun filed a reply to Versata's counterclaims on February 14, 2008, raising, *inter alia*, Versata's failure to state a claim.    Sun now moves to dismiss Versata's five non-patent counterclaims based on Versata's failure to allege essential elements of each.

## II.    SUMMARY OF ARGUMENT

Pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, Sun respectfully requests that the Court dismiss the non-patent counterclaims asserted by Versata for failure to state a claim.

In response to Sun's claims of patent infringement, Versata alleged patent defenses and counterclaims.  In addition, Versata asserted five non-patent counterclaims alleging antitrust violations, unfair competition, and misrepresentation.    Largely attempting to repackage its patent defenses as affirmative claims with few additional facts, none of Versata's non-patent counterclaims state a claim upon which relief may be granted.  Indeed, Versata has not alleged and cannot allege facts sufficient to demonstrate essential, core elements of its non-patent counterclaims.    Each should be dismissed without leave to amend.

1.    Versata asserts antitrust counterclaims but fails to adequately plead the most fundamental elements of an antitrust claim—monopoly power and a defined relevant market.  Versata does not allege facts sufficient to show that Sun either has monopoly power or that there is a dangerous probability that it will obtain such power.  Indeed, Versata makes no allegation regarding Sun's market share whatsoever.  Nor does Versata define the relevant market in terms required to state the attempted

monopolization claims it asserts, ignoring the presence of competitors and competing products altogether. These two elements are the heart of an antitrust claim and Versata's inability to plead facts sufficient to demonstrate them—as well as a number of other essential elements—requires dismissal of its antitrust counterclaims.

      **2.**      Versata asserts intentional and negligent misrepresentation counterclaims but fails to allege even an inconsistent statement by Sun, let alone a false or misleading one. Versata's claims of material omission fail to allege facts supporting the existence of a duty to speak—an essential element of its claims. Versata's failure to sufficiently plead these fundamental elements of its misrepresentation counterclaims requires their dismissal.

      **3.**      Versata's California state law unfair competition claim requires either an unlawful, fraudulent, or unfair act. Versata alleges no additional facts in support of this counterclaim and relies solely on its defective antitrust and misrepresentation counterclaims. Because Versata's deficient antitrust and misrepresentation counterclaims fail to state a claim, or facts even close to stating a claim, Versata has failed to allege a predicate unlawful, fraudulent, or unfair act necessary to support an unfair competition claim under California law. Accordingly, Versata's unfair competition counterclaim must also be dismissed.

      **4.**      Versata has not adequately pled any of its non-patent counterclaims and its allegations and the exhibits it attaches to its answer demonstrate that it cannot do so. Versata's exhibits contain affirmative evidence refuting its antitrust, misrepresentation, and unfair competition counterclaims. Accordingly, they each should be dismissed without leave to amend.

      **5.**      At a minimum, the interests of efficiency, judicial economy, and fairness require that Versata's non-patent counterclaims be stayed pending resolution of the patent claims. Versata's counterclaims are based primarily on the assumption that it will prevail

on Sun's claim of patent infringement—among the only elements of the counterclaims Versata was able to plead.  Thus, unless Versata prevails on the patent issues, litigating the significant additional issues and discovery required by Versata's non-patent counterclaims will, *per se*, be an unnecessary waste of the parties' and the court's resources.  As this and other courts have recognized, bifurcating and staying non-patent counterclaims is the appropriate course – and the only means – to prevent such waste and the likelihood of juror confusion from proceeding with so many complex issues at once. Such outcomes would be particularly unjust here, where Versata has failed to plead essential, core elements of its non-patent counterclaims.

## III.    STATEMENT OF FACTS

On November 30, 2007, Sun filed the complaint in this lawsuit alleging Versata's infringement of U.S. Patent Nos. 6,832,223, 5,870,719, 5,963,950, and 5,761,662, which were attached as exhibits A through D to the complaint.  D.I. 1.  On January 25, 2008, Versata filed an answer and counterclaims to Sun's complaint, attaching 22 exhibits (A through V).  D.I. 22.  Versata's response asserted patent defenses and counterclaims seeking declaratory relief regarding Sun's patents.

In addition, Versata asserted five non-patent counterclaims alleging:  (1) antitrust violations (Counts Five and Six); (2) unfair competition under California Business and Professions Code § 17200 *et seq.* (Count Eight); and (3) intentional and negligent misrepresentation (Counts Nine and Ten).  These counterclaims are based almost entirely on Versata's prevailing on the patent issues in this case.

## IV.    ARGUMENT

Sun brought this action to address Versata's infringement of four patents.  In response, Versata asserted patent-based defenses and counterclaims.  Versata also sought to tack a number of non-patent counterclaims on to this patent dispute based almost entirely upon Versata prevailing on the underlying patent action.  Versata's attempt to

recast its patent defenses as antitrust, unfair competition, and misrepresentation claims fails as a matter of law. None of these counterclaims state a claim upon which relief can be granted, as Versata did not and cannot allege facts sufficient to establish core requirements of each.

To bolster its defective counterclaims, Versata resorts to accusations regarding Sun's motivation in filing suit, speculating that it is "retaliation" for a suit previously filed by Versata in the Eastern District of Texas. Versata's conjecture is unfounded, irrelevant, and does nothing to remedy its inability to allege facts essential to its counterclaims. Versata's infringement of Sun's patents is unrelated to Versata's claims before the Texas court. If Sun's claims were related to Versata's suit or in "retaliation" for it, they would have been raised as counterclaims in the Texas action. However, Versata has adopted a common strategy of interjecting baseless non-patent claims into patent disputes both here and in the Texas action, where Versata has accused Sun of patent infringement yet is simultaneously asserting claim trade secret protection on the same information it alleges is covered—and therefore was necessarily disclosed to the public—by the patents at issue. Its counterclaims here are equally flawed and should be dismissed without leave to amend.

### A.    Applicable Legal Standard

The defense of failure to state a claim upon which relief can be granted may be raised in a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B). Such motions are reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (citations omitted). *Turbe v. Gov't of the Virgin Is.*, 938 F.2d 427, 428 (3d Cir. 1991).

Under Federal Rule of Civil Procedure 12(b)(6), a court need not credit "bald assertions" or "legal conclusions" when ruling on a motions to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); Fed. R. Civ. P. 12(b)(6). The court

4

should grant the motion when there is no reasonable reading of the complaint that entitles the plaintiff to relief. *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). When reviewing a motion to dismiss, the court can consider the "complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.¸* 361 F.3d 217, 221 n.3 (3d Cir. 2004). Material allegations in the complaint must be accepted as true and construed in the light most favorable to the claimant. *Morse*, 132 F.3d at 906. However, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007).

### B. Versata's Non-Patent Counterclaims Must be Dismissed Because Versata Has Failed to Allege Facts Sufficient to State a Claim

Here, Versata's counterclaims Five and Six, which allege violations of the Sherman Antitrust Act, 15 U.S.C. § 2, must be dismissed because Versata has failed to plead facts sufficient to show that Sun either possesses, or attempted to obtain, a monopoly in the markets alleged by Versata. 15 U.S.C. § 2 (2007). Versata's counterclaim Eight, which alleges a violation of California Business and Professions Code § 17200 *et seq.*, must be dismissed because Versata failed to state facts or allegations sufficient to show that Sun committed any offense under that code section. Finally, Versata's counterclaims Nine and Ten, which allege intentional misrepresentation and concealment, and negligent misrepresentation, must be dismissed because Versata has merely pled legal conclusions and has failed to plead facts sufficient to show that Versata suffered an actionable injury.

1.    **Versata's Antitrust Counterclaims Must be Dismissed Because Versata Has Failed to Plead Facts Essential to Core Elements of an Antitrust Claim**

The crux of any antitrust claim is the presence or high risk of monopoly power in the relevant market. *See* Robert Pitofsky, *New Definitions of Relevant Market and the Assault on Antitrust*, 90 COLUM. L. REV. 1805, 1807 (1990) ("In monopoly enforcement under section 2 of the Sherman Act, the pivotal inquiry is almost always whether the challenged party has substantial market power in its relevant market."). Thus, Versata's antitrust counterclaims must allege facts sufficient to show (1) either actual possession, or a dangerous probability of acquiring possession, of monopoly power (2) in a specifically defined "relevant market."[1] Each of these core requirements is subject to specific pleading requirements. Versata's conclusory allegations—which do little more than recant the elements' labels—fail to state an antitrust claim under the Sherman Act.

There simply cannot be an antitrust violation without power the relevant market. However, Versata merely alleges the predicate patent violations for an antitrust claim (sham litigation and inequitable conduct) and largely ignores the monopoly power and relevant market requirements at the heart of an antitrust claim. This is plainly insufficient to state a claim and, if adopted, Versata's view would permit antitrust counterclaims into virtually every patent infringement case. The law is clear and requires dismissal of Versata's antitrust counterclaims.

---

[1]    In limited circumstances where possession of monopoly power is shown through "direct evidence," an antitrust violation may be found without specifically defining the relevant market. *Broadcom*, 501 F.3d at 307 n.3. However, Versata has not asserted this as a basis for its counterclaims. Nor could it. To show such an antitrust violation requires evidence of "supracompetitive pricing" (*i.e.*, the ability to charge more than the market would naturally yield). Versata makes no allegations that Sun engaged in such conduct. Indeed, its only allegation regarding pricing is that Sun licensed Java for free, the antithesis of supracompetitive pricing. *See* D.I. 22 at ¶¶ 189, 192.

(a)     **Versata fails to allege facts sufficient to satisfy the "monopoly power" elements of its antitrust claims.**

Under 15 U.S.C. § 2, an antitrust violation can occur when a defendant either monopolizes or attempts to monopolize interstate or international commerce. *Broadcom*, 501 F.3d at 306.  While claims of monopolization and attempted monopolization require distinct elements, both are centered around monopoly power.  First, a claim of actual monopolization requires "[p]ossession of monopoly power in the relevant market." *See, e.g., Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005) *citing United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  Second, a claim of attempted monopolization similarly requires "a dangerous probability of achieving monopoly power." *See, e.g., Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998).  If a pleading fails to allege facts sufficient to prove these essential elements, the claim must be dismissed. *See, e.g., Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997); *Crossroads*, 159 F.3d at 142.  Such is the case for Versata's antitrust counterclaims.  Despite its centrality to the purpose of the antitrust laws, Versata's counterclaims all but ignore the notion of monopoly power.

As the Third Circuit has recognized, a fundamental consideration in assessing the requisite presence or danger of a monopoly is the accused party's share of the relevant market. *See, e.g., Broadcom*, 501 F.3d at 307 (a monopolization claim must "plead . . . that a firm has a dominant share in a relevant market"), *citing Harrison Aire*, 423 F.3d at 381; *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992) (while not an exclusive factor, "the size of a defendant's market share is a significant determinant of whether a defendant has a dangerous probability of successfully monopolizing the

relevant market"). [2]    However, Versata never alleges in its 54-page answer and counterclaims what Sun's share of the purported relevant market is nor whether that share is dominant.

Instead, Versata merely recants the labels for these requisite elements "[u]pon information and belief." *See, e.g.,* D.I 22 at ¶ 95 ("there is a dangerous probability of Sun achieving monopoly power"); *id.* at ¶ 98 ("Sun's conduct has achieved, or has a dangerous probability of achieving monopoly power"); *id.* at ¶ 170 ("there is a dangerous probability of Sun achieving monopoly power"). The Supreme Court has made clear that such allegations are insufficient to state a claim, as a claimant's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and ***a formulaic recitation of the elements of a cause of action will not do***[.]" *Bell Atl.*, 127 S. Ct. at 1964-65 (emphasis added). Versata's limited allegations beyond these labels likewise fail to state a claim.

Versata's allegation regarding the "dangerous probability" of achieving monopoly power is merely a conclusion and is insufficient under *Bell Atlantic*. Based on Sun's assertion of patents against specific products in this case, Versata sweepingly concludes that "all manufacturers of web-enabled software platforms in the United States will be forced to enter into anticompetitive license agreements with Sun, thereby giving Sun control over 100% of the relevant product and geographic markets[.]" D.I. 22 at ¶ 98. Such a speculative conclusion is insufficient to state claim. It requires the incredible assumption that the only "web-enabled software platforms" in the United States are those specific applications covered by the patents-in-suit and therefore would require a license. Otherwise, under Versata's logic, the assertion of any patent in any market would *per se*

---

[2]    As detailed below, Versata also failed to allege facts sufficient to show any of the other possible factors (barriers to entry, strength of competition, probable development of the market, and nature of the alleged anti-competitive conduct) suggest a dangerous probability of Sun monopolizing the alleged relevant market.

establish a dangerous possibility of "control over 100%" of that market, effectively eliminating the central element of an antitrust claim in all patent cases. This is not the law and cannot state a claim.

Versata's additional allegation regarding the possession of monopoly power is similarly insufficient. Versata quotes a Sun press release providing:

> Since its introduction in May 1995, the Java platform has been adopted more quickly across the industry than any other technology in computing history. All major computing platform vendors have signed up to integrate Java technology as a core component of their products. What got the Java platform from there to here appears to have been sheer momentum. As Lisa Friendly said, "The developers really made all this happen. It wasn't the hype."

D.I. 22 at ¶ 99, *quoting* Exhibit A. However, neither the exhibit nor any of Versata's allegations suggest that the adoption of Java precluded the use of, or eliminated the need for, other "web-enabled software platforms" and therefore conferred any monopoly power. Merely asserting that a product is successful is not sufficient to show that the product occupied a dominant share of the relevant market. *See Bell Atl.*, 127 S. Ct. at 1964-65. Indeed, this illogical speculation required to connect the allegation with Versata's claim is inconsistent with the very passage it quotes, which makes clear that "vendors have signed up to *integrate* Java" into their existing software products as "*a*" component within those products. D.I. 22 at ¶ 99.[3]

---

[3] Moreover, Versata's pleading demonstrates that any such speculative monopoly power was a result of a superior product and business acumen and fails to state an antitrust claim. *See Harrison Aire*, 423 F.3d at 380 (requiring "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"). The quoted passage attributes the success of Java to "sheer momentum" and states that "'The developers really made all this happen. It wasn't the hype.'" D.I. 22 at ¶ 99. Versata's pleading further attributes the success of Java to Sun's business acumen reflected in its decision to license Java free of charge to developers. *See, e.g.*, D.I. 22, Exh. A ("'We released the source code over the Internet in the belief that the developers would decide for themselves,' said Lisa Friendly. The team knew that releasing code to developers for free is one of the fastest ways to create widespread adoption.").

Because Versata has failed to plead facts sufficient to show that Sun had a dominant, or even significant, share of the market for "web-enabled software platforms," Versata's claims under the Sherman Antitrust Act must be dismissed.

**(b)    Versata fails to allege facts necessary to state the existence of a relevant market.**

The antitrust laws are not directed to market power in the abstract, but rather require careful consideration of the relevant market. However, as with the essential monopoly-power elements of its counterclaims, Versata's allegations fail to properly address requirements regarding the existence and definition of the relevant market.

As the Third Circuit has explained:

> The scope of the market is a question of fact as to which the plaintiff bears the burden of proof. Competing products are in the same market if they are readily substitutable for one another; a market's outer boundaries are determined by the reasonable interchangeability of use between a product and its substitute, or by their cross-elasticity of demand. ***Failure to define the proposed relevant market in these terms may result in dismissal of the complaint.***

*Broadcom*, 501 F.3d at 307 (internal citations omitted, emphasis added). Versata wholly fails to define the proposed relevant market in these terms—or any others.

While Versata relies on three articles discussing Sun's competition with Microsoft, Versata's allegations make no connection between such competition and the cross-elasticity of demand or interchangeability of products in its proposed market. D.I. 22 at ¶¶ 155, 157, 161. Accordingly, Versata has failed to plead an essential element of its antitrust counterclaims: "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is *legally insufficient* and a motion to dismiss may be granted." *Queen City Pizza*, 124 F.3d at 436 (emphasis added).

10

        **(c)**      **Versata fails to address additional essential elements of an antitrust claim.**

In addition to monopoly power and the definition of the relevant market, Versata's allegations fail to address a host of elements the Third Circuit has recognized as parts of antitrust claims.

First, both possession and dangerous probability of monopoly power are based upon the existence of barriers to entry in the relevant market. *See, e.g., Harrison Aire*, 423 F.3d at 381, *citing Queen City Pizza*, 124 F.3d at 436-37. Again, not only does Versata fail to allege any facts that indicate there are barriers to entry in the market for "web-enabled software platforms," but its Exhibits provide affirmative proof that the software industry is easily accessible and few barriers exist. *See, e.g.*, D.I. 22, Exh. G ("new programming languages are almost as common as graduate student dissertations").

Second, the dangerous probability of monopoly power required to state an attempted monopolization claim may be based upon the strength of the competition in the relevant market. *Broadcom*, 501 F.3d at 317, *citing Crossroads*, 159 F.3d at 141. While two of Versata's exhibits reference Java's competition with offerings from Microsoft, Versata makes no allegation regarding the strength of such competition in its proposed market for "web-enabled software platforms." Moreover, those exhibits attribute a dominant market position to Microsoft in which Sun represented an alternative for "small developers who couldn't afford to work with Microsoft." D.I. 22 at ¶ 155, Exh. I. *See also id.*, Exh. J (Sun represents "'a direct assault on Microsoft's whole paradigm[,]'" which includes "an installed base of 100 million computers running Windows").

Third, the dangerous probability of monopoly power required to state an attempted monopolization claim may be further based upon the "probable development of the industry." *Broadcom*, 501 F.3d at 317, *citing Crossroads*, 159 F.3d at 141.

Versata makes alleges no facts that could show that this factor supports a finding of antitrust liability.

Fourth, the dangerous probability of monopoly power required to state an attempted monopolization claim is further based upon the "nature of the anticompetitive conduct" alleged. *Broadcom*, 501 F.3d at 317, *citing Crossroads*, 159 F.3d at 141. Versata alleges that "Sun has achieved monopoly power through predatory and anticompetitive conduct, such as filing the present lawsuit." D.I. 22 at ¶ 100. A patent suit against an individual defendant that is admittedly only one member of a "community" of developers of "web-enabled software platforms" is hardly sufficient to establish a dangerous probability that Sun will achieve monopoly power in that proposed market. Versata alleges no facts supporting its bald—and erroneous—conclusion that this is the case.

Versata's attempt to shoehorn its alleged patent defenses into antitrust counterclaims fails by a wide margin. Versata has failed to plead the threshold elements of Sun's actual market share or even what makes up the proposed relevant market. Neither of Versata's antitrust counterclaims state a claim. Moreover, Versata's allegations and exhibits affirmatively demonstrate that Versata cannot plead sufficient facts to state a claim upon which it is entitled to relief and both should be dismissed without leave to amend.

### 2. Versata's Misrepresentation Counterclaims Must be Dismissed Because Versata Failed to Allege Facts Sufficient to Show a Misrepresentation or a Duty to Disclose any Alleged Omissions

In Counts Nine and Ten, Versata asserts counterclaims for (1) intentional misrepresentation and concealment, and (2) negligent misrepresentation. Both of these claims require either an affirmative misrepresentation or a material omission accompanied by a duty to speak. *Matthews Office Designs, Inc. v. Taub Invs.*, 1994 Del. LEXIS 182, at *3 (Del. May 25, 1994), *citing Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472

(Del. 1992); *Bradford v. Vento*, 48 S.W.3d 749, 754-755 (Tex. 2001); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 131-132 (Cal. Ct. App. 2007); CAL. CIV. CODE § 1710 (West 1997 & Supp. 2007); Restatement Second of Torts § 551(a). Versata has failed to state a claim under either theory. Indeed, Versata's allegations and exhibits confirm that Sun's alleged actions have not even been inconsistent, let alone deceptive or misleading.

(a)    **Versata fails to allege any misrepresentation by Sun.**

Versata has alleged both intentional and negligent misrepresentation based on an alleged affirmative misrepresentation by Sun. However, Versata fails to allege any misrepresentation and its pleading and exhibits demonstrate that Sun's statements have been clear, truthful, and consistent.

First, Versata relies on its allegations that Sun granted the public a license to all intellectual property "required" to use and compile programs with the Java programming language and thereafter Sun asserted the patents in this case. *See, e.g.*, D.I. 22 at ¶¶ 188-190, *id.* at ¶ 191 ("Sun granted to the general public a . . . limited license to all Sun intellectual property that was ***required*** to develop Java-based programs.") (emphasis added), *id.* at ¶¶ 192, 193, and 200. There is nothing inconsistent, let alone misleading, about this conduct. The patents in suit are not "required" to use the Java programming language. Rather, the patents are directed to specific products and methods that may be implemented using Java or a number of other programming languages from sources other than Sun. *Compare* D.I. 1, Exhs. A-D (patents in suit do not require, or in some cases mention, Java) *with* D.I. 22, Exh. P ("[L]imited license (without the right to sublicense) under SUN's intellectual property *essential to practice this specification*. This license allows *and is limited to* the creation of clean room implementations of this specification[.]" emphasis added) *and* D.I. 22, Exh. T (same). In short, the patents in suit are not necessary to use Java and Java is not necessary to implement the patents. Thus,

13

the alleged grant of a public license to "required" intellectual property simply does not include the patents asserted here, either expressly or impliedly.

Second, Versata relies on its allegations that Sun licensed third-parties, including Versata, to use the Java language (*i.e.*, granted *software* licenses) and thereafter brought this claim for patent infringement.  D.I. 22 at ¶¶ 188-193, ¶ 200, Exhs. S, U, V.  Again, there is nothing inconsistent, let alone misleading, about this conduct.  The alleged licenses Versata relies upon and attaches are explicitly "Software License[s]" and neither include nor suggest a license to the patents asserted in this case.  This is confirmed by the exhibits Versata attaches to its Answer and Counterclaims.  *See, e.g.*, D.I. 22, Exh. S ("Sun reserves all rights not expressly granted."); Exhs. U, V ("Sun grants you a . . . limited license . . . to reproduce and use internally Software complete and unmodified for the sole purpose of running Programs.").  The alleged licenses delineate the rights granted in extensive and detailed terms.  No party could reasonably read the language of these software/copyright licenses and conclude that they included a license to unrelated patents that neither are necessary to use nor require the use of the software language being licensed.

> **(b)      Versata has not and cannot allege facts establishing a duty speak as required to state a claim for material omission.**

Versata has also alleged both intentional and negligent misrepresentation based on an alleged omission.  Both claims require the complainant to plead facts supporting a duty to speak.  Restatement Second of Torts § 551(a); *Matthews Office Designs*, 1994 Del. LEXIS at *3; *Bradford*, 48 S.W.3d at 754-755; *Linear Tech.*, 152 Cal. App. 4th at 131-132; CAL. CIV. CODE § 1710.  Neither Versata's formulaic recitation of the duty requirement nor the handful of facts it alleges sufficiently state a basis for the requisite duty.  *See* D.I. 22 ¶ 194.

In a business setting, a duty to speak only exists in five limited and recognized circumstances: (1) in a fiduciary or other similar relationship between the parties; (2) when failure to disclose would render partial or ambiguous statements from being misleading; (3) when subsequently acquired information will make prior statements untrue or misleading; (4) if one party learns that the other is about to act with reliance on a false statement made by the first party; or (5) facts basic to the transaction if one party knows the other is about to rely on a mistake as to those facts, and that the relying party, because of the relationship or customs of the trade, would reasonably expect those facts to be disclosed. Restatement Second of Torts § 551(a). Versata has not and cannot allege facts that support a duty under any of these five theories.

First, Versata has not alleged that a relevant fiduciary or similar relationship existed between it and Sun and none ever has. Second, none of the alleged Java software licenses upon which Versata relies are partial or ambiguous as to the rights they convey, none of which encompass the patents in suit, which are neither necessary to, nor require, the use of Java. Exhs. U, V ("Sun grants you a . . . limited license . . . to reproduce and use internally Software complete and unmodified for the sole purpose of running Programs."). Third, nothing about Sun's acquisition of intellectual property not covered by the alleged Java licenses renders them untrue or misleading. Fourth, Versata's allegation that it relied upon the alleged software licenses is irrelevant, as Versata has failed to allege facts that could show any statement in those licenses was false. Fifth, Versata has failed to show that the patents at issue, which relate to specific software products which can be implemented using a variety of programming languages, relate to the Java license in any way, let alone that the existence of these patents were basic facts relevant to the Java copyright license.

Accordingly, Versata has not and cannot allege facts supporting the requisite duty to speak and its counterclaims based on misrepresentation by omission should be

15

dismissed.  Versata's attempt to recast an unfounded implied license defense as a misrepresentation counterclaim fails for good reason.  Versata's assertion that a party must disclose unrelated intellectual property that is *not* covered by a license yet could hypothetically be infringed by a party at some later date would turn countless existing commercial agreements on their head.  Any failure to disclose unrelated intellectual property that a product could conceivably be used or modified to create an infringing product would subject a party to fraud claims.[4]  Imposing a duty to disclose all after-acquired intellectual property, however unrelated, on licensors creates an excessive burden and a disincentive to license which, in turn, stifles growth and innovation.  No such duty exists under the law and Versata's claims must be dismissed.

Furthermore, because Versata's allegations and exhibits affirmatively refute its counterclaims for misrepresentation, the Court should dismiss this counterclaim without leave to amend.  Indeed, because Versata was required to plead these counterclaims with particularity under Federal Rule of Civil Procedure 9(b) in the first instance, there is no reason to believe Versata did not come forward with all the facts it could in support of its misrepresentation counterclaims.

### 3. Versata's Unfair Competition Claims Must be Dismissed Because Versata Failed to Plead Facts Sufficient to Show that Sun Committed an Unlawful, Unfair, or Fraudulent Act

Versata's counterclaims brought under the California unfair competition statutes must be dismissed because Versata has failed plead facts sufficient to show that Sun committed an unlawful, unfair or fraudulent act.  CAL. BUS. & PROF. CODE § 17200, *et seq.* (West 1997 & Supp. 2008).  The California Supreme Court has made it clear that there are three types of action that qualify as unfair competition under § 17200 *et seq.*:

---

[4]    Under Versata's logic, if Sears held a patent on the use of screwdriver and an unrelated patent on a workbench, it would be fraudulent for it to not disclose its workbench patent with every sale of a screwdriver because a customer could hypothetically later use the screwdriver to build an infringing workbench.

"acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc.* *v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). Versata relies only on its other non-patent counterclaims in alleging Sun committed unlawful, unfair or fraudulent acts. Because Versata has failed to state a claim for the antitrust and misrepresentation counterclaims upon which it relies, its counterclaim that Sun violated § 17200 *et seq.* must likewise be dismissed.

Under § 17200 *et seq.*, unlawful acts are "anything that can properly be called a business practice and that at the same time is forbidden by law." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (citation omitted). To support its assertion of unlawful acts, Versata relies upon its antitrust and fraud counterclaims without alleging any additional facts. D.I. 22 at ¶ 181. However, as detailed herein, Versata has failed to allege sufficient facts to state a claim for an antitrust violation or for fraudulent misrepresentation. Because Versata has failed to sufficiently allege a requisite "unlawful act," Versata's claim that Sun violated § 17200 *et seq.* by engaging in unlawful acts must also be dismissed.

Under § 17200 *et seq.*, unfair acts are "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. In alleging that Sun engaged in unfair acts, Versata merely recites the standard set out in *Cel-Tech*.[5] D.I. 22 at ¶ 182. Beyond this label, Versata only relies upon the deficient allegations of

---

[5]    Versata's Answer and Counterclaims states:

> Sun's unfair conduct threatens an incipient violation of an antitrust law, violates the policy or spirit of one or more of these laws because its effects are comparable to or the same as a violation of the law, and otherwise significantly threatens or harms competition.

D.I. 22 at ¶ 182.

its antitrust counterclaim without alleging any additional facts supporting a claim that Sun engaged in "unfair acts" under § 17200. As discussed above, Versata's antitrust allegations must be dismissed because Versata has failed to plead facts sufficient to show that Sun ever had, or is in danger of obtaining, a monopoly on the market for "web-enabled software platforms." Versata's failure to address whether or not Sun possesses or is in danger of possessing a monopoly, which it is not, reveals the largest shortcoming of Versata's antitrust claims: Sun is not in a monopoly position. Without alleging facts tending to show possession of, or danger of possessing, a monopoly, Versata simply cannot show that Sun violated the "policy or spirit" of the antitrust laws or "significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187.

Under § 17200 *et seq.*, "fraudulent acts" and statements are only actionable under § 17200 *et seq.* if they "are likely to deceive a reasonable consumer." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007). Again, Versata's assertion of § 17200 liability for fraudulent acts merely recites the legal requirements for fraud. D.I. 22 at ¶ 183. Beyond these insufficient conclusions, Versata relies only on its misrepresentation counterclaims without alleging any additional facts. As detailed above, Versata's misrepresentation counterclaims have not and cannot state a claim upon which relief may be granted. Indeed, the facts alleged by Versata do not include any inconsistent position, let alone an affirmative misrepresentation, and do not support any duty to speak that would support a claim based on omission. Because Versata has not pled facts sufficient to state a claim for fraud, Versata's claim that Sun violated § 17200 *et seq.* by engaging in fraudulent acts must be dismissed.

Versata's reliance on its other deficient counterclaims as the basis for its § 17200 counterclaim requires that it be likewise dismissed, as Versata fails to allege facts supporting any unlawful, unfair, or fraudulent act necessary to support a claim under § 17200 *et seq.* Moreover, because Versata's allegations and exhibits affirmatively refute

the antitrust and misrepresentation counterclaims upon which it relies, the court should dismiss this counterclaim without leave to amend.

### C.    At a Minimum, Versata's Non-Patent Counterclaims Should be Stayed Because Many are Predicated on Resolution of Underlying Patent Issues

In addition to patent defenses, Versata has asserted a number of non-patent counterclaims that are necessarily premised on its prevailing on Sun's infringement claims (e.g., antitrust liability based on alleged sham litigation and inequitable conduct). Unless Versata prevails on the patent issues, litigating the significant additional issues and discovery on Versata's non-patent counterclaims will, *per se*, be an unnecessary waste of the parties' and the court's resources. As this and other courts have recognized, bifurcating and staying non-patent counterclaims is the appropriate course – and the only means – to prevent such waste and the likelihood of juror confusion from proceeding with so many complex issues at once.

It is within the court's discretion to determine whether a case should be bifurcated and/or stayed. Fed. R. Civ. P. 42(b); *see, e.g.*, *Enzo Life Sciences, Inc. v. Digene Corp.*, 2003 U.S. Dist. LEXIS 10202, at *16-17 (D. Del. June 10, 2003) (Farnan, J.). This exercise of discretion is guided by several factors, including: avoiding prejudice, conserving judicial resources; enhancing juror comprehension of complex issues; and achieving a just final disposition of the litigation. *Enzo Life Sciences*, 2003 U.S. Dist. LEXIS at *14-15. Here, all of these factor weigh in favor of staying Versata's non-patent counterclaims until the underlying patent claims are resolved.

Judicial economy and efficiency strongly favor staying non-patent counterclaims until patent claims are resolved. *In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986) ("Economy is served because in the trial of the patent issues the validity of the patent and [patent infringement defendant's] affirmative defenses will be determined and will become law of the case and thus removed from the trial on the [] antitrust issues….").

19

Here, Versata's antitrust and related counterclaims are necessarily premised on Versata prevailing on Sun's claims of patent infringement. Because of this, resolution of the patent issues prior to the antitrust and other issues will clarify and potentially obviate Versata's counterclaims entirely. A stay is the only way to ensure that the court and parties do not expend the significant resources litigating discovery and issues that may be rendered unnecessary by the patent claims.

This and a number of other courts have commonly held that these interests warrant staying non-patent counterclaims, which involve significant additional discovery and issues at considerable expense of the parties. *Neomagic Corp. v. Trident Microsystems, Inc.*, 2001 U.S. Dist. LEXIS 14585, at *3 (D. Del. Sept. 7, 2001) (listing reasons for staying discovery on antitrust claims in infringement action: "avoid the delay of discovery and trial on the primary patent infringement . . . avoid potential waste of resources for the parties and the court . . . continuing viability of the antitrust claim was dependent on the outcome of the patent infringement claims") (lifting stay on antitrust issues after summary judgment of non-infringement was granted); *In re Innotron Diagnostics*, 800 F.2d at 1084 (noting twenty-three cases from eight circuits that stayed antitrust claims pending resolution of patent claims).

A stay is particularly warranted here, given Versata's inability to plead the facts necessary to sufficiently state the counterclaims it is asserting. The interests of fairness favor a stay to prevent subjecting the Court and the parties to significant and expensive discovery on specious counterclaims Versata cannot plead. As the Supreme Court has recognized:

> The costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.

*Bell Atl.*, 127 S. Ct. at 1967, *quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Separating and staying Versata's non-patent counterclaims is also necessary to avoid the likelihood of juror confusion that would result from adding numerous ancillary legal issues to an already complex case involving four patents. Indeed, other courts have recognized that separating such counterclaims from a patent case is "standard practice." *In re Innotron Diagnostics*, 800 F.3d at 1084 ("district court noted cases reflecting the now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim"). As this court has explained:

> Bifurcation is an important discretionary tool that district courts can use to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them.
>
> "Many scholars have endorsed bifurcation in complex cases as a method of improving juror comprehension. Specifically, bifurcation might enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at a particular time."

*Enzo Life Sciences*, 2003 U.S. Dist. LEXIS 10202, at *16-17, *citing* Steven S. Gensler, *Bifurcation Unbound*, 75 WASH. L. REV. 705, 725 (2000).

Sun is entitled to have its patent claims fairly resolved, free of juror confusion. Thus, staying Versata's non-patent counterclaims until the patent issues are resolved is the clearest way to serve that right.

## V.    CONCLUSION

For the foregoing reasons, Sun respectfully requests that the Court dismiss Versata's non-patent counterclaims of Counts Five, Six, Eight, Nine, and Ten without leave to amend or, at a minimum, stay those counterclaims pending resolution of the patent issues upon which they are based.

DATED:  April 18, 2008                    Respectfully submitted,

                                              /s/  *Michael A. Barlow*
                                          Paul J. Lockwood (Del. I.D. No. 3369)
                                          Michael A. Barlow (Del. I.D. No. 3928)
                                          SKADDEN, ARPS, SLATE,
                                            MEAGHER & FLOM LLP
                                          One Rodney Square, P.O. Box 636
                                          Wilmington, Delaware  19899
                                          Tel:    (302) 651-3000
                                          Fax:    (302) 651-3001
                                          E-mail:  Paul.Lockwood@skadden.com
                                                     Michael.Barlow@skadden.com

                                          Attorneys for Plaintiff
                                          Sun Microsystems, Inc.


OF COUNSEL:

Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
Tel:    (650) 470-4500
Fax:    (650) 470-4750

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on April 18, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld
> Karen Jacobs Louden

I also certify that copies were caused to be served on April 18, 2008 upon the following in the manner indicated:

**BY HAND DELIVERY**                    **BY E-MAIL**

Jack B. Blumenfeld                       Peter J. Ayers
Karen Jacobs Louden                      McKool Smith
Morris, Nichols, Arsht & Tunnell LLP     300 West 6th Street, Suite 1700
1201 North Market Street                 Austin, Texas 78701
P.O. Box 1347                            (502) 692-8700
Wilmington, Delaware 19899               payers@McKoolSmith.com
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com

 /s/  *Michael A. Barlow*
Michael A. Barlow