```
                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF DELAWARE

SUN MICROSYSTEMS, INC.,              :
                                     :
     Plaintiff/                      :
     Counter-Defendant,              :
                                     :
     v.                              :
                                     :
VERSATA ENTERPRISES, INC.,           :  Civil Action No. 07-782-JJF
VERSATA SOFTWARE, INC.,              :
VERSATA DEVELOPMENT GROUP,           :
INC., VERSATA COMPUTER               :
INDUSTRY SOLUTIONS, INC.,            :
VERSATA, INC., TRILOGY, INC.,        :
and NEXTANCE, INC.                   :
                                     :
     Defendants/                     :
     Counter-Claimants.              :
```

Jeffrey G. Randall, Esquire and David W. Hansen, Esquire of
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Palo Alto, CA.
Darryl M. Woo, Esquire and Charlene M. Morrow, Esquire of FENWICK
& WEST LLP, Mountain View, CA.
Paul J. Lockwood, Esquire and Michael A. Barlow, Esquire of
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, DE.
William J. Wade, Esquire and Anne Shea Gaza, Esquire of RICHARD
LAYTON & FINGER, P.A., Wilmington, DE.

Attorneys for Plaintiff/Counter-Defendant.

Peter J. Ayers, Esquire; James N. Willi, Esquire and John B.
Campbell, Esquire of MCKOOL SMITH, P.C., Austin, TX.
Jack B. Blumenfeld, Esquire and Karen Jacobs Louden, Esquire of
MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

Attorneys for Defendants/Counter-Claimants.

**MEMORANDUM OPINION**

July ___, 2009
Wilmington, Delaware

Farnan, District Judge

Pending before the Court is Sun Microsystems, Inc.'s ("Sun") Motion to Dismiss Defendants' Non-Patent Counterclaims (D.I. 28 in 07-782-JJF) and Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6). Also before the Court is Sun's Motion to Strike Pursuant to Rule 12(f) (D.I. 27 in 08-504-JJF). For the reasons discussed, both Motions will be granted in part and denied in part.

## I.   BACKGROUND

Sun is the assignee of the seven U.S. Patents at issue in this suit. The suit involves U.S. Patent Nos. 6,832,223 ("the '223 patent"), 5,870,719 ("the '719 patent"), 5,963,950 ("the '950 patent"), 5,761,662 ("the '662 patent"), 5,727,203 ("the '203 patent"), 6,076,092 ("the '092 patent"), and 6,912,520 ("the '520 patent"). The patents cover various methods, systems, processes, or apparatuses for managing different types of website user-generated data. Sun alleges that Versata has made, used, offered for sale, and/or sold a system that infringes one or more claims of the '223 patent, the '719 patent, the '950 patent, and the '662 patent, in violation of 35 U.S.C. § 271(b) and (c). (D.I. 1 in 07-782-JJF ¶¶ 5-24.) Sun also alleges, upon information and belief, that Versata has made, used, offered for sale, and/or sold the Logic Suite and Business Rules Management System and related components, which Sun alleges infringes the

2

'203 patent, the '092 patent, and the '520 patent.  (D.I. 1 in 08-504-JJF ¶¶ 5-22.)

On November 30, 2007, Sun filed a first action against Versata Enterprises, Inc., Versata Software, Inc., Versata Development Group, Inc., Versata Computer Industry Solutions, Inc., Versata, Inc., Trilogy, Inc., and Nextance, Inc. (collectively, "Versata"), alleging infringement of the '223 patent, the '719 patent, the '950 patent, and the '662 patent. (D.I. 1 in 07-782-JJF.)  Versata filed its Answer to this action on January 25, 2008.  (D.I. 22 in 07-782-JJF.)  In its Answer, Versata denies that it is infringing any of the patents, asserts a variety of defenses, and seeks declarations of noninfringement and/or invalidity and/or unenforceability.  (D.I. 22 in 07-782-JJF at 2-12.)  In addition, Versata asserts six non-patent counterclaims, alleging that Sun engaged in several different monopolistic, unfair, and fraudulent business practices.  (D.I. 22 in 07-782-JJF at 12-52.)  On April 18, 2008, Sun filed a Motion to Dismiss these non-patent counterclaims.  (D.I. 28 in 07-782-JJF.)  Specifically, Sun has moved to dismiss Counts Five (Attempted Monopolization Under 15 U.S.C. § 2 Sham Litigation), Six (Attempted Monopolization Under 15 U.S.C. § 2 Walker Process Fraud), Eight (Unfair Competition Under California Business & Professions Code § 17200 et seq.), Nine (Intentional

3

Misrepresentation & Concealment), and Ten (Negligent Misrepresentation) of Versata's counterclaims.

Sun filed a second action against Versata on August 11, 2008, alleging infringement of the three other Sun patents at issue: the '203 patent, the '092 patent, and the '520 patent. (D.I. 1 in 08-504-JJF.)  Versata filed its Answer and Amended Counterclaims in this action on October 24, 2008.  (D.I. 24 in 08-504-JJF.)  In its Answer and Amended Counterclaims, Versata denies that it is infringing any of the patents, asserts a variety of defenses, and seeks declarations of noninfringement and/or invalidity and/or unenforceability.  (D.I. 24 in 08-504-JJF at 2-9.)  On November 7, 2008, Sun filed a Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6) and Motion to Strike Pursuant to Rule 12(f).  (D.I. 27 in 08-504-JJF.)  In that Motion, Sun requested that the Court dismiss all three of Versata's counterclaims and that the Court strike Versata's Fourth through Twelfth Defenses.[1]  (Id.)

On September 16, 2008, Versata filed a Motion to Consolidate the two actions.  (D.I. 11 in 08-504-JJF.)  The Court granted Versata's Motion to Consolidate Cases on December 1, 2008, combining the two actions under Civ. No. 07-782-JJF.  (D.I. 34 in 08-504-JJF.)

---

[1] In order, those defenses are: equitable estoppel, laches, waiver, license, unclean hands, implied license, patent exhaustion, failure to mark, and limitation on damages and costs.

4

## II.    THE PARTIES' CONTENTIONS

Although the Court consolidated Civil Action Nos. 07-782-JJF and 08-504-JJF into Civil Action No. 07-782-JJF, it did not do so until the briefing on Sun's motion to dismiss in each action was nearly complete.  Accordingly, below, the Court will refer separately to Sun's Motion To Dismiss in the first action (07-782-JJF) and Sun's Motion To Dismiss in the second action (08-504-JJF).

### A.    Sun's Motion To Dismiss In The First Action (07-782-JJF)

Sun contends in its Opening Brief in Support of Its Motion to Dismiss Defendants' Non-Patent Counterclaims in the first action that Versata has failed to state claims for relief in Counts Five, Six, Eight, Nine, and Ten of its Answer to Complaint and Counterclaims.  (D.I. 30 in 07-782-JJF.)

Sun argues that the Court should dismiss Counts Five and Six, which deal with violations of the Sherman Act, 15 U.S.C. § 2, because Versata has not pleaded facts sufficient to establish the essential elements of a prima facie antitrust claim.  (D.I. 30 in 07-782-JJF at 6.)  Specifically, Sun argues that Versata has not pleaded facts sufficient to show that Sun had a "dominant, or even significant, share of the market for 'web-enabled software platforms,'" has not adequately defined the proposed relevant market, and has not addressed other essential elements of an antitrust claim.  (Id. at 10-12).

As for Versata's misrepresentation counterclaims (Counts Nine and Ten), Sun contends that Versata has failed to allege either intentional or negligent misrepresentation, and that Versata has not alleged facts establishing Sun's duty to speak, an essential element of a misrepresentation claim. (Id. at 13-16). Finally, Sun argues that the Court should dismiss Versata's unfair competition counterclaim (Count Eight) because it necessarily relies on the defective misrepresentation counterclaims in order to establish the essential element of an unlawful, unfair, or fraudulent act on Sun's part. (Id. at 16-19.) Should the Court not dismiss these five counterclaims, Sun argues that they should be stayed pending resolution of the patent issues on which they are predicated. (Id. at 19-21.)

Versata responds in its Answering Brief (D.I. 39 in 07-782-JJF) that all five non-patent counterclaims Sun seeks to dismiss comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." (See D.I. 39 in 07-782-JJF at 5 (citing Fed. R. Civ. P. 8(a)(2)).) Versata argues that even after Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2008), all that Versata is required to do is "plead sufficient facts to suggest that the evidence could be discovered," and that Versata has done just that with respect to all five counterclaims Sun seeks to dismiss. (D.I. 39 in 07-782-

6

JJF at 6-7 (emphasis in original).)  With respect to Counts Five
and Six, Versata argues that not only has it satisfied pleading
requirements as to the elements of its antitrust claims, but also
that the issues of Sun's monopoly power and the relevant market
are "particularly fact-intensive [inquiries] that are seldom
properly made at the pleading stage."  (Id. at 9-10.)  Versata
next contends that Count Eight, unfair competition, is adequately
pleaded, even in the absence of Counts Five, Six, Nine, and Ten,
because Count Seven, which Sun does not dispute is properly
pleaded, alleges inequitable conduct by Sun.  (Id. at 12-13.)
This, Versata argues, satisfies the California unfair competition
statute's requirement of an unlawful, unfair, or fraudulent
business practice in order to sustain an unfair competition
claim.  (Id.)

     As for its misrepresentation counterclaims (Counts Nine and
Ten), Versata contends that it has pleaded both an affirmative
misrepresentation and concealment on Sun's part.  (Id. at 14-16.)
Specifically, Versata argues that "Sun promised not to sue
developers such as Versata for developing, testing, and using
Java-based applications," that Versata justifiably relied on that
promise and developed such an application, and that Sun then sued
Versata for infringement, reneging on its promise.  (Id. at 14.)
Versata also argues that Sun failed to disclose "the fact that
[it] was planning to seek patent protection for a Java-based

configurator application," a fact that materially qualified its invitation to Versata and other users to download Java and begin creating Java-based applications. (Id. at 15.) Finally, Versata argues that it should be given an opportunity to amend its counterclaims, should the Court dismiss them, and that the Court should not stay its counterclaims or bifurcate the action, should the Court deny Sun's motion to dismiss them. (Id. at 17-19.)

## B.   Sun's Motion To Dismiss In The Second Action (08-504-JJF)

With respect to the Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6) and Motion to Strike Pursuant to Rule 12(f), (D.I. 27 in 08-504-JJF), which Sun filed in the second action, Sun contends that Versata has failed to state claims for relief with respect to its three counterclaims for declaratory judgment and that the Court should strike nine of Versata's defenses because they are without adequate supporting facts. Sun argues that all three counts of Versata's counterclaims should be dismissed because Versata has not adequately pleaded any of its theories as to why the '203, '092, and '520 patents are unenforceable. (D.I. 29 in 08-504-JJF at 4, 8.) However, Sun does not appear to take issue with Versata's counterclaims insofar as they seek to invalidate the '203, '092, and '520 patents for not complying with 35 U.S.C. §§ 101, 102, 103, and/or 112. Sun only discusses the counterclaims with respect to their unenforceability claims, which rely upon the same theories

8

Versata uses in many of its defenses.  (See id. at 4-8
(discussing license, implied license, patent exhaustion,
estoppel, waiver, and unclean hands).)

Sun next contends that Versata's equitable estoppel, waiver,
license, unclean hands, implied license, and patent exhaustion
defenses should be stricken because Versata has failed to plead
facts sufficient to support the three counterclaims on these
bases.  (Id. at 9; see also id. at 4-8 (discussing Versata's
defenses as they form a partial basis for its counterclaims).)
Similarly, Sun argues that Versata's laches defense should be
stricken because Versata has not alleged any of the required
elements of laches.  (Id. at 9.)  Sun next contends that
Versata's failure to mark defense is not a recognized defense and
should be stricken.[2]  (Id.)  Finally, Sun requests that the Court
strike Versata's "limitation on damages and costs" defense
because it is an inadequately explained and "illegible pleading."
(Id. at 5-6, 10.)

Versata responds in its Answering Brief (D.I. 35 in 08-504-
JJF) that the Federal Rules of Civil Procedure require mere

---

[2] Sun erroneously refers to this as Versata's "false
marking" (D.I. 29 in 08-504-JJF at 9) defense, but Versata
clearly states its defense as "failure to mark," (D.I. 24 in 08-
504-JJF at 5), and properly refers to 35 U.S.C. § 287, which,
inter alia, limits damages for patent infringement where the
patentee has not marked the patented article made, offered for
sale, or sold within the United States, as a patented article.
See 35 U.S.C. § 287(a).

notice pleading, that the Supreme Court's decision in Twombly did not change this fundamental truth, and that it has pleaded its three counterclaims in accordance with these standards. (Id. at 4-7.) Generally, Versata accuses Sun of "attempt[ing] to impose a pleading standard that the Federal Rules do not require." (Id. at 7.) Versata further contends that all nine of the defenses Sun wishes stricken are properly pleaded. (Id. at 7-9.) It points out that motions to strike are generally disfavored and argues that it is not required to "plead facts on an element-by-element basis for each defense." (Id. at 8.) Versata contends that its failure to mark and limitations on damages and costs defenses should not be stricken because they are proper defenses to Sun's damages claims and are included to put Sun on notice and preserve Versata's rights. (Id.) Next, Versata argues that Sun has not alleged, as it must, that the defenses in question will hinder or prejudice Sun as the litigation proceeds, or that the defenses "will harm Sun, create unnecessary burdens, or cause delay." (Id. at 9.) Finally, Versata requests leave to amend, should Sun's motion be granted in whole or in part. (Id.)

## III. LEGAL STANDARD

In considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in a complaint as true and consider them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89

(2007). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P. 8(a)). A complaint need not contain detailed factual allegations; however, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotations and citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 547. To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 173 L. Ed. 2d 868, 884 (2009). In sum, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of' the necessary element."
Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)
(quoting Twombly, 550 U.S. at 556).

With respect to motions to strike, Federal Rule of Civil
Procedure 12(f) states, in relevant part, that "[a] court may
order stricken from any pleading any insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter." Fed.
R. Civ. P. 12(f). Motions to strike serve "to clean up the
pleadings, streamline litigation, and avoid unnecessary forays
into immaterial matters." McInerney v. Moyer Lumber & Hardware,
Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002); Sepracor Inc. v.
Dey, L.P., No. 06-113-JJF, 2008 U.S. Dist. LEXIS 74193, at *5 (D.
Del. Sept. 26, 2008). Motions to strike are generally disfavored
and ordinarily are denied "unless the allegations have no
possible relation to the controversy and may cause prejudice to
one of the parties." McInerney, 244 F. Supp. 2d at 402. When
ruling on a motion to strike, "the [c]ourt must construe all
facts in favor of the nonmoving party and deny the motion if the
defense is sufficient under law." Proctor & Gamble Co. v.
Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988)
(internal citations omitted). A motion to strike a defense
should not be granted "unless the insufficiency of the defense is

'clearly apparent.'" Cipollone v. Liggett Group, Inc., 789 F.2d
181, 188 (3d Cir. 1986), rev'd on other grounds, 505 U.S. 504
(1992), (internal citations omitted).

## IV. DISCUSSION

### A. Sun's Motion To Dismiss Versata's Non-Patent Counterclaims (D.I. 28 in 07-782-JJF)

#### 1. Counts Five And Six: Attempted Monopolization

A patentee may be subject to antitrust liability "for the
anti-competitive effects of [an infringement] suit if the alleged
infringer (the antitrust plaintiff) proves (1) that the asserted
patent was obtained through knowing and willful fraud within the
meaning of Walker Process . . . , or (2) that the infringement
suit was a mere sham to cover what is actually nothing more than
an attempt to interfere directly with the business relationships
of a competitor." Nobelpharma AB v. Implant Innovations, 141
F.3d 1059, 1068 (Fed. Cir. 1998). To establish antitrust
liability under one of these theories, a plaintiff must further
show attempted monopolization on the part of the defendant.
This, in turn, requires the plaintiff to establish that "the
defendant (1) had specific intent to monopolize the relevant
market, (2) engaged in anti-competitive or exclusionary conduct,
and (3) possessed sufficient market power to come dangerously
close to success." Barr Labs., Inc. v. Abbott Labs., 978 F.2d
98, 112 (3d Cir. 1992). Thus, in order to survive a motion to
dismiss a claim brought under 15 U.S.C. § 2, a plaintiff must

sufficiently allege the relevant market, the "outer boundaries" of which "are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997). The Third Circuit has further explained that The Sherman Act demands more than "[a]lleging market share alone . . . . Monopolization or threatened monopolization requires something more, which may include 'the strength of competition, probable development of the industry, the barriers to entry, the nature of the anti-competitive conduct, and the elasticity of consumer demand.'" Crossroads Cogeneration Corp. v. Orange & Rockland Utils., 159 F.3d 129, 141 (3d Cir. 1998) (quoting Barr Labs., 978 F.2d at 112).

Leaving aside the question of whether Versata has adequately pleaded facts establishing prima facie sham litigation and Walker Process fraud claims (Counts Five and Six, respectively),[3] the Court concludes that it must dismiss Counts Five and Six because Versata has not adequately pleaded attempted monopolization. Specifically, the Court concludes that Versata has not adequately

---

[3] Sun does not appear to dispute that Versata has adequately pleaded the elements of sham litigation and Walker Process fraud claims, as it focuses its attention in its briefing on arguing only that Versata has not adequately pleaded the required elements of attempted monopolization. (See D.I. 30 in 07-782-JJF at 6-12; D.I. 44 in 07-782-JJF at 2-5.)

14

alleged the boundaries of the relevant market or that Sun
possessed sufficient power within that market to come dangerously
close to monopolization. Indeed, Versata offers no allegations
regarding "the reasonable interchangeability of use or the
cross-elasticity of demand between the product itself and
substitutes for it." Queen City Pizza, 124 F.3d at 436
(explaining that a motion to dismiss may be granted "[w]here the
plaintiff fails to define its proposed relevant market with
reference to the rule of reasonable interchangeability and
cross-elasticity of demand, or alleges a proposed relevant market
that clearly does not encompass all interchangeable substitute
products even when all factual inferences are granted in
plaintiff's favor"). Nor does Versata allege facts pertaining to
Sun's share of the market for web-enabled software platforms,
instead relying on conclusory assertions that "Sun's conduct has
achieved, or has a dangerous probability of achieving monopoly
power," and that "there is a dangerous probability of Sun
achieving monopoly power" in the relevant market. (D.I. 22 in
07-782-JJF at 27, 45.) The only reference Versata makes to Sun's
specific market share is when it asserts, hypothetically, that if
Sun is not enjoined, Sun will control "100% of the relevant
product and geographic markets." (Id. at 27.) Versata relies on
numerous exhibits to support its allegations regarding Sun's
possible monopoly for web-enabled software platforms in the

15

United States. (See id., Exs. A-O.) However, an examination of these exhibits reveals that they do not contain sufficient facts in support of Versata's allegations. Rather, they are a collection of Sun press releases announcing news related to Java, articles about Java's and/or Sun's success, books about how to use Java, and articles about the growth of high-tech businesses in general in the Silicon Valley during the 1990s. (Id.) While some of the articles show that numerous companies adopted or endorsed Java as a programming language for the Web, the Court is not persuaded that these articles show anything more than Sun's relative success in the market. (E.g., id., Exs. F, K.) They do not even approximately establish what Sun's market share was or could be. Under the standard of pleading articulated in Twombly and clarified in Iqbal, Versata must supply more detailed allegations in order to survive a motion to dismiss. Indeed, even under the pre-Twombly standard articulated in Crossroads, alleging market share alone was not enough to state an antitrust claim. Accordingly, the Court will grant Sun's motion to dismiss Counts Five and Six of Versata's Counterclaims.

The question now is whether to grant Versata leave to amend both Counts. Because the parties do not contest that Versata has pleaded the elements of sham litigation and Walker Process claims, the only apparent defect in Counts Five and Six that has been presented to the Court is Versata's inadequate pleading of

16

the underlying attempted monopolization required to sustain

Counts Five and Six. Other district courts within this Circuit

have granted leave to amend in similar circumstances. For

instance, in Teva Pharm. Indus. v. Apotex, Inc., No. 07-5514

(GEB) (JJH), 2008 U.S. Dist. LEXIS 60418, at *25-*26 (D.N.J. Aug.

8, 2008), the court dismissed defendant's attempted

monopolization claims without prejudice under similar

circumstances. The court noted that "the relevant market

allegations are deficient because Apotex fails to define its

proposed relevant market with reference to the rule of reasonable

interchangeability and cross-elasticity of demand." Teva Pharm.

Indus., 2008 U.S. Dist. LEXIS 60418, at *25-*26. The court also

stated that "[t]he Amended Answer is deficient for the additional

reason that it contains no allegations regarding market power . .

. ." Id. at *26. As discussed above, both of these defects are

present here. Similarly, in Brotech Corp. v. White Eagle Int'l

Techs. Group, Inc., No. 03-232, 2003 U.S. Dist. LEXIS 21073 at

*16 (E.D. Pa. Nov. 18, 2003), the court dismissed a sham

litigation counterclaim without prejudice, even though the court

found "that the Counterclaim alleges a proposed market which does

not encompass any interchangeable substitute products and does

not allege that there are no substitute products." Brotech Corp.

, 2003 U.S. Dist. LEXIS 21073 at *16 . Finding that the facts of

the present action are similar to those of Teva and Brotech, the

17

Court will dismiss Counts Five and Six without prejudice.

### 2.  Counts Nine And Ten: Misrepresentation

Under California law,[4] "the elements of fraud [or intentional misrepresentation] are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." OCM Principal Opportunities Fund v. CIBC World Mkts. Corp., 157 Cal. App. 4th 835, 845 (Cal. Ct. App. 2007) (internal quotations and citations omitted). Negligent misrepresentation is similar but "does not require scienter or intent to defraud." Id. It requires "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," along with the elements of reliance and resulting damage. Id.; Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 174 (Cal. 2003). Finally, to establish fraud through concealment, it must also be shown that the defendant was under a legal duty to disclose the allegedly concealed facts. OCM Principal Opportunities Fund, 157 Cal. App. 4th at 845.

---

[4] The parties agree that California law applies to Counts Nine and Ten of Versata's counterclaims. (See D.I. 30 in 07-782 at 12-14; D.I. 39 in 07-782 at 14-16.) Therefore, the Court will apply California law for the sake of deciding this aspect of the instant Motion.

Because Counts Nine and Ten sound in fraud, they are subject to the heightened pleading requirements of Rule 9(b). See In re Student Finance Corp., No. 03-507-JJF, 2004 U.S. Dist. LEXIS 4952, at *6-*7 (D. Del. Mar. 23, 2004); Fed. R. Civ. P. 9(b). Plaintiffs may meet Rule 9(b)'s requirements "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations and citations omitted). The allowance of pleading particularity through "alternative means" requires courts to "apply Rule 9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party." Cordance Corp. v. Amazon.com, Inc., 255 F.R.D. 366, 372 (D. Del. 2009) (footnote and quotation omitted).

i. **Count Nine: Intentional Misrepresentation & Concealment**

Briefly, and as set forth above, the basis for Sun's intentional misrepresentation and concealment claims is that Sun invited developers to develop Java-based programs, granted them licenses to do so, provided users with licenses to run such Java-based programs, and concealed the existence of patents and patent applications which materially qualified these representations and actions. (D.I. 22 in 07-782-JJF at 50-51.) On reviewing Versata's pleading, the Court concludes that Versata has alleged

19

all the elements of intentional misrepresentation and
concealment.[5]

The question is whether Versata has alleged these elements
with the level of particularity required under Rule 9(b).
Versata alleges that in 1996 and 1997, "Sun granted to the
general public [certain] fully-paid, nonexclusive,
nontransferable, perpetual, worldwide limited license[s] to all
Sun intellectual property that was required" to develop, compile,
and use Java-based programs. (Id. at 48-49.)   Further, Versata
alleges that Sun provides developers, including Versata, "a
license to use the software development kits to design, develop,
and test Java-based programs for commercial purposes." (Id. at
49.)   Versata alleges the existence of additional end-user and
other licenses to use various aspects of Java. (Id. at 49-50.)

_____

[5] First, Versata alleges upon information and belief that
"by filing this lawsuit, Sun has engaged in fraud." (D.I. 22 in
07-782-JJF at 48.)   Versata goes on to allege that "Sun has
misrepresented material facts by false representations,
concealment, or nondisclosure." (Id.)   Second, Versata alleges
that "Sun knew that Versata would reasonably rely on Sun's
misrepresentations, concealment, and/or nondisclosure." (Id. at
50.)   Third, Versata alleges that "Sun intended to induce Versata
to develop Java-based applications." (Id.)   Fourth, Versata
alleges that it "justifiable [sic] relied on Sun's
misrepresentations, concealment, and/or nondisclosure by
developing Java-based applications," and that "if Versata had
been aware of Sun's relevant patents and patent applications,
Versata would not have developed Java-based applications." (Id.
at 51.)   Fifth, Versata alleges injury. (Id.)   Finally, in order
to establish fraud by concealment, Versata alleges that under all
these circumstances, Sun "had a duty to disclose its relevant
patents and patent applications to the Java development community
including Versata." (Id. at 51.)

Versata also contends that by issuing such licenses, "while failing to disclose relevant patents and patent applications such as the '223 and '719 patents to the Java development community including Versata, Sun intended to induce Versata to develop Java-based applications." (Id. at 50.) Under such circumstances, Versata argues, "Sun had a duty to disclose its relevant patents and patent applications to the Java community including Versata." (Id. at 50-51.) Versata claims it justifiably relied on Sun's misrepresentations by developing Java-based applications, (id. at 51), and that Sun has engaged in fraud, (id. at 48), by filing the present action, which is at odds with Sun's alleged past representations.

In support of these allegations, Versata attaches no fewer than nine exhibits, all either Web pages or book excerpts, to its Answer and Counterclaims. (Id., Exs. A-B, P-V.) Exhibits P, S, T, U, and V all contain the language of several Sun license agreements pertaining to various aspects of Java. Exhibits A, B, Q, and R are offered as evidence of Sun's inducement of developers to download and use Java for free to create applications. Count Nine provides dates (and URLs, where relevant) associated with these publications. Given the nature of the alleged misrepresenting publications, in particular the Web pages, it is not feasible for Versata to plead specific places or times at which the misrepresentations occurred.

21

Although Versata alleges upon information and belief that Sun's patent infringement claims are made in bad faith and that by filing the present action Sun has engaged in fraud, these allegations still satisfy Rule 9(b) because the related allegations supporting them are not made upon information and belief and contain sufficient factual support for the allegations of bad faith and fraud. See River Rd. Dev. Corp. v. The Carlson Corp. - Ne., No. 89-7037, 1990 U.S. Dist. LEXIS 6201, at *27-*28 (E.D. Pa. May 23, 1990) (pleading of counterclaims sounding in fraud satisfied Rule 9(b), even though some allegations were made upon information and belief, because supporting factual allegations of specific instances of fraudulent conveyances were not made upon information and belief); accord Engle v. Matrix Golf & Hospitality Phila. LLC, No. 08-5831, 2009 U.S. Dist. LEXIS 44351, at *14-*15 (E.D. Pa. Mar. 31, 2009) (finding that complaint alleging fraudulent transfer satisfied Rule 9(b), even though "most of Engle's allegations concerning the fraudulent transfer were based upon information and belief," because paragraph where Engle alleged the fraudulent transaction at the heart of his case was not based upon information and belief).

Further, in accordance with Cordance, the Court must "apply Rule 9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party," Cordance Corp., 255 F.R.D. at 372, and Rule 9(b) states

22

that "[m]alice, intent, knowledge, and other conditions . . . may be alleged generally," F. R. Civ. P. 9(b).[6]  Sun's intent and knowledge as to its infringement claims and the true purpose of its action against Versata come within the scope of these rules. That Versata pleads Sun's intent and knowledge upon information and belief is not fatal to Count Nine because Versata has pleaded additional facts, not upon information and belief, that support its allegations regarding Sun's intent and knowledge.  Therefore, the Court concludes that Versata has pleaded Count Nine with the level of particularity required under Rule 9(b).  Accordingly, the Court will deny Sun's motion to dismiss Count Nine of Versata's counterclaims.

### ii.  Count Ten: Negligent Misrepresentation

Versata has also alleged all the elements of negligent misrepresentation.[7]  Based on Versata's allegations in Count Ten,

---

[6] The Third Circuit has made clear that this provision of Rule 9(b) applies to corporations as well as natural persons. See Broadcom Corp. v. Qualcomm, Inc., 501 F.3d 297, 315 n.9 (3d Cir. 2007).

[7] First, Versata alleges upon information and belief that "by filing this lawsuit, Sun has engaged in negligent misrepresentation.  Sun made false representations as to past or existing material fact to Versata . . . without reasonable grounds to believe in the truth of its representations."  (D.I. 22 in 07-782 at 51.)  Second, Versata has alleged justifiable reliance on Sun's misrepresentations and resulting damages.  (Id. at 52.)  Third, although it was not required to allege knowledge of falsity or intent to induce reliance on this count, Versata has alleged that Sun "knew that Versata would reasonably rely on Sun's misrepresentations, and Suns [sic] engaged in such misrepresentations with the intent to induce Versata to rely

the incorporated allegations from Count Nine, and the preceding
applicable analysis regarding Count Nine, supra Part IV.A.2.i.,
the Court denies Sun's motion to dismiss Count Ten of Versata's
counterclaims in Civil Action No. 07-782-JJF.

### 3. Count Eight: Unfair Competition

California Business & Professions Code § 17200 defines
unfair competition as, inter alia, "any unlawful, unfair or
fraudulent business act or practice." Cal. Bus. & Prof. Code §
17200.  The scope of the California unfair competition statute is
"sweeping, embracing anything that can properly be called a
business practice and that at the same time is forbidden by law."
Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527,
539 (Cal. 1999).  Further, because the statute "is written in the
disjunctive, it establishes three varieties of unfair competition
- acts or practices which are unlawful, or unfair, or fraudulent.
In other words, a practice is prohibited as 'unfair' or
'deceptive' even if not 'unlawful' and vice versa." Id. at 540.
Finally, "Section 17200 'borrows' violations from other laws by
making them independently actionable as unfair competitive
practices. . . .  '[A] practice may be deemed unfair even if not
specifically proscribed by some other law.'" Korea Supply Co. v.

_____

thereon." (Id.) Finally, Versata supplements its negligent
misrepresentation allegations by incorporating by reference the
allegations of Count Nine and the other counts of its
counterclaims. (Id. at 48.)

Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003) (quoting Cel-Tech Commns., Inc., 973 P.2d at 539-540).

Because § 17200 is construed broadly and "borrows violations from other laws," and because the Court finds Versata has adequately pleaded Counts Nine and Ten, which allege that Sun engaged in business practices that at the very least are "unfair," the Court will deny Sun's Motion to Dismiss with respect to Count Eight as well. Cel-Tech Commns., Inc., 973 P.2d at 539-540.

**B. Sun's Motion To Dismiss Counterclaims Pursuant To Rule 12(b)(6) And Motion To Strike Pursuant To Rule 12(f) (D.I. 27 in 08-504-JJF)**

**1. Versata's Defenses**

The Court first considers whether to grant Sun's motion to strike most of Versata's defenses.[8,9] In general, "even where the

---

[8] The parties dispute whether the pleading standard announced by the Supreme Court in Twombly with respect to Rule 8(a) also applies also to pleading affirmative defenses under Rule 8(c). The parties are not alone in this dispute; the District Courts themselves do not agree on the matter. See, e.g., Safeco Ins. Co. of Am. v. O'Hara Corp., No. 08-CV-10545, 2008 U.S. Dist LEXIS 48399, at *3 (E.D. Mich. June 25, 2008) (stating that "defenses fall within the ambit of Twombly" and striking affirmative defenses without prejudice); Holtzman v. B/E Aerospace, Inc., No. 07-80551-CIV-MARRA/JOHNSON, 2008 U.S. Dist. LEXIS 42630, at *6 (S.D. Fla. May 28, 2008) (citing Twombly as support for the proposition that a defendant must "alleg[e] facts as part of the affirmative defenses" and granting plaintiff's motion for a more definite statement); First Nat'l Ins. Co. of Am. v. Professional Pool Techs, LLC, No. 08-cv-12805, 2009 U.S. Dist. LEXIS 149, at *5 (E.D. Mich. Jan. 5, 2009) (holding that "Twombly's analysis of the 'short and plain statement' requirement of Rule 8(a) is inapplicable to [motions to strike affirmative defenses]"); Westbrook v. Paragon Sys., Inc., No.

challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." Symbol Techs., Inc. v. Aruba Networks, Inc., No. 07-519-JJF, 2009 U.S. Dist. LEXIS 25776, at *12 (D. Del. Mar. 30, 2009) (quotations omitted); accord La. Sulphur Carriers, Inc. v. Gulf Resources & Chemical Corp., 53 F.R.D. 458, 460 (D. Del. 1971) (". . . absent a showing of prejudice, courts are often reluctant to decide disputed and substantial questions of law [on a motion to strike]"). However, a court is not required to accept affirmative defenses that are mere "bare bones conclusory allegations," and may strike such inadequately pleaded defenses. Cintron Beverage Group, LLC v. DePersia, No. 07-3043, 2008 U.S. Dist. LEXIS 30716, at *5 (E.D. Pa. Apr. 15, 2008); see also CFMT,

---

07-0714-WS-C, 2007 U.S. Dist. LEXIS 88490, at *1-*2 (S.D. Ala. Nov. 29, 2007) (distinguishing Rule 8(c) from Rule 8(a) and refusing to apply Twombly in considering a motion to strike affirmative defenses). In the Court's view, the instant Motion does not necessitate a resolution of this dispute.

[9] District of Delaware Local Rule 7.1.3 provides, inter alia, "(2) Reply briefs. – The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief . . . ." D. Del. R. 7.1.3(c)(2). In the Court's view, Sun has reserved for its Reply Brief discussion of several post-Twombly cases directly on point. See, e.g., Home Mgt. Solutions, Inc. v. Prescient, Inc., No. 07-20608, 2007 U.S. Dist. LEXIS 61608 (S.D. Fla. Aug. 21, 2007). There is no reason why these cases should not have been mentioned in Sun's Opening Brief. (See D.I. 36 in 08-504-JJF at 8-9.) Accordingly, the Court will not consider Sun's Reply Brief to the extent it relies on these cases.

Inc. v. YieldUp Intern. Corp., No. CIV. A. 95-549-LON, 1996 U.S.
Dist. LEXIS 22795, at *3 (D. Del. Apr. 5, 1996) (citing
approvingly Heller Financial, Inc. v. Midwhey Powder Co., Inc.,
883 F.2d 1286, 1294-95 (7th Cir. 1989), for the proposition that
striking "bare bones conclusory allegations" expedites
litigation).

### i. Equitable Estoppel, Laches, And Waiver

In its Fourth, Fifth, and Sixth Defenses, Versata alleges
equitable estoppel, laches, and waiver against Sun. (D.I. 24 in
08-504-JJF at 4.) Taking them in order, with respect to
equitable estoppel, Versata must allege facts tending to show
that: (1) Sun's misleading words, conduct, or silence led Versata
to reasonably infer that Sun did not intend to enforce the
patents at issue against Versata; (2) Versata relied on that
conduct; and (3) due to its reliance, Versata will be materially
prejudiced if Sun is allowed to proceed with its claim.  Tenneco
Auto. Operating Co. v. Visteon Corp., 375 F. Supp. 2d 375, 383
(D. Del. 2005). Here, Versata alleges only that "Sun is estopped
by its misleading, deceptive, and unlawful conduct from asserting
that Versata's products or methods infringe any valid claim of
the '203 patent, the '092 patent, and the '520 patents [sic]."
(Id.) Taking the Answer and Amended Counterclaims in their
entirety, the Court concludes that Versata's conclusory
allegation of Sun's "misleading, deceptive, and unlawful conduct"

is inadequate to plead an equitable estoppel defense. Although
this court recently denied a motion to strike an equitable
estoppel defense, even though "the factual record before the
Court [was] sparse," the defendant in that case presented a great
deal more than the bare allegation Versata has presented here.
See Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d
353, 357 (D. Del. 2009). In Symbol Techs., defendant Aruba
Networks alleged that "Plaintiff Symbol is equitably estopped
from asserting its . . . Patents because at no point during
extensive merger negotiations between Symbol and [Aruba] in 2003
did Symbol advise or suggest it might later assert the patents at
issue against [Aruba]." Id. at 356. Although Aruba's equitable
estoppel defense was not factually detailed, it was still far
more detailed than Versata's equitable estoppel defense here.[10]
Even when taken with the whole of the Answer and Amended
Counterclaims, Versata's equitable estoppel defense gives Sun no
notice as to exactly what "misleading, deceptive, and unlawful
conduct" supports a finding of equitable estoppel.[11]   (D.I. 24 in

---

[10] In fact, Aruba devoted eight detailed paragraphs,
constituting a page and a half of its twenty-page Answer, to
alleging its equitable estoppel defense. A review of Aruba's
Answer confirms that, even though this Court characterized the
factual record as to equitable estoppel as "sparse," Aruba
adequately pleaded the elements of a prima facie equitable
estoppel defense. (See D.I. 8 in 07-519-JJF at 7-8.)

[11] The Third Circuit has stated that the "purpose of
requiring the defendant to plead available affirmative defenses
in his answer is to avoid surprise and undue prejudice by

No. 08-504-JJF at 4.) Further, "a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." Cipollone, 789 F.2d at 188 (quotation omitted). Here, the Court concludes that Versata's equitable estoppel defense is not detailed enough to allow Sun to avoid surprise and undue prejudice, and that the defense, as currently alleged, is clearly insufficient. Accordingly, the Court will strike this defense. However, the Court will allow Versata leave to amend its pleading to remedy the deficiencies discussed herein.

Versata's Fifth and Sixth Defenses are more deficient. Versata simply alleges that "Sun's claims are barred or limited by the doctrine of laches" and that "Sun has waived all rights, if any, to enforce each of the '203 patent, the '092 patent, and the '520 patent [sic] against Versata's products." (D.I. 24 in 08-504-JJF at 4.) A laches defense has two elements: "(1) the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the defendant suffered material prejudice or injury as a result of the plaintiff's delay." Tenneco Auto. Operating Co., 375 F. Supp. 2d at 380. As for waiver, "generally speaking the three

---

providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." In re Sterten, 546 F.3d 278, 285 (3d Cir. 2008) (quotation omitted).

requirements or elements necessary to establish an effective waiver are: an existing right, knowledge of the right, [and] an actual intention to relinquish the right."  28 Am. Jur. 2d Estoppel and Waiver § 201.  At the very least, the Court finds no allegations supporting - or even suggesting - the first element of laches (which would pertain to Sun's unreasonable delay in filing suit), and no allegations supporting the final element of waiver (which would pertain to Sun's actual intention to relinquish its patent rights).  Thus, there are insufficient factual allegations in Versata's Answer and Amended Counterclaims to support either a laches or a waiver defense, and accordingly, the Court will strike both of these defenses.  However, as above, the Court will allow Versata leave to amend its pleading to remedy the deficiencies discussed herein.

### ii.  License

Versata's Seventh Defense, license, alleges "[u]pon information and belief [that] Sun freely licenses its 'Java Database Connectivity (JDBC) API' software/source code to the industry, including Versata."  (D.I. 24 in 08-504-JJF at 4.) Versata attaches two Exhibits showing Web pages where Sun appears to describe and license its JDBC API technology.  Versata also points specifically to claim 2 of the '520 patent and alleges that "[t]o the extent that Sun's infringement claims under the '520 patent are based in whole or in part on Versata's use of

30

Java then Versata has a license, as do Versata's customers."
(Id.)  Versata has pointed to a specific license, as well as a
specific Sun technology and a specific claim of a Sun patent
allegedly covered by that license.  Given this level of detail,
the Court is unable to conclude that retaining Versata's license
defense would prejudice Sun or that the insufficiency of the
defense is "clearly apparent."  Cipollone, 789 F.2d at 188.
Accordingly, the Court will not strike Versata's Seventh Defense.

### iii. Unclean Hands

The doctrine of unclean hands applies when "(1) a party
seeking affirmative relief (2) is guilty of conduct involving
fraud, deceit, unconscionability, or bad faith (3) directly
related to the matter in issue (4) that injures the other party
(5) and affects the balance of equities between the litigants."
Castle v. Cohen, 676 F. Supp. 620, 627 (E.D. Pa. 1987).  The
inequitable conduct alleged "must have an immediate and necessary
relationship to the equity which [the plaintiff] seeks to obtain
in the matter in litigation."  Blanchette v. Providence &
Worcester Co., 428 F. Supp. 347, 357 (D. Del. 1977).
"[M]isconduct in the abstract, unrelated to the claim which it is
asserted as a defense, does not constitute unclean hands."  De
Long Corp. v. Raymond Int'l, Inc., 622 F.2d 1135, 1146, n.10 (3d
Cir. 1980), overruled en banc on other grounds by Croker v.
Boeing Co. (Vertol Div.), 662 F.2d 975, 984 (3d Cir. 1981).

Versata's only allegation regarding its unclean hands defense is that "Sun's claims with respect to the '520 patent are barred by the doctrine of unclean hands, based upon Sun's conduct as detailed in [Versata's license defense] above." (D.I. 24 in 08-504-JJF at 5.) Nevertheless, the Court cannot conclude that the allegations Versata makes in its license defense suggest mere "misconduct in the abstract, unrelated to the claim which it is asserted as a defense." De Long Corp., 622 F.2d at 1146, n.10. If indeed Sun has sought the Court's relief for infringement of the '520 patent after it granted Versata a license to the '520 patent, as Versata claims, then Sun may be guilty of conduct involving at least bad faith, directly related to its patent infringement claims, injurious to Versata, and affecting the balance of the equities between the parties. Based on the facts Versata has alleged, therefore, the Court concludes that Sun's motion to strike Versata's unclean hands defense must be denied.

### iv. Patent Exhaustion

Under the patent exhaustion or "first sale" doctrine, "a patent holder's rights in a patented article extend only to the first sale of the article. After the first sale, the holder's rights are exhausted." Monsanto Co. v. Good, No. 01-5678 (FLW), 2003 U.S. Dist. LEXIS 27217, at *28 (D.N.J. July 24, 2003) (internal citation and quotation omitted). Versata's sole patent exhaustion defense allegation states that "based upon Sun's

32

conduct as detailed in [the license defense] above, Sun has exhausted its rights in the '520 patent by licensing Java to Versata." (D.I. 24 in No. 08-504-JJF at 5.) However, as with the unclean hands defense just discussed, Versata has provided enough factual support in its incorporated license defense to adequately allege patent exhaustion as well. Accordingly, the Court will deny Sun's motion to strike Versata's patent exhaustion defense.

### v.    Implied License

In general, an implied license "signifies a patentee's waiver of the statutory right to exclude others from making, using, selling, offering to sell, or importing the patented invention." Wang Lab. v. Mitsubishi Elecs. Am., 103 F.3d 1571, 1580 (Fed. Cir. 1997). An implied license may be established by: (1) equitable estoppel, (2) acquiescence, (3) conduct, or (4) legal estoppel. Id. In this context, an implied license by equitable estoppel generally requires, inter alia, that "the patentee objects to the infringer's activities, but the patentee does not seek relief until much later . . . ." Id. at 1581. Here, Sun has indeed objected to Versata's activities (by filing the present action), but, as explained above, Versata has failed to adequately allege that Sun improperly delayed seeking relief. Therefore, based on the current pleadings, an implied license cannot exist due to equitable estoppel.

33

An implied license by acquiescence arises where a "plaintiff was bound to know that the royalties it received were for devices corresponding to the patent in suit, [thus justifying] defendant . . . in concluding that plaintiff consented to the manufacture of the accused devices within the scope of the asserted patent." AMP, Inc. v. United States, 389 F.2d 448, 452 n.4 (Ct. Cl. 1968). Versata has made no allegations suggesting any such arrangement between it and Sun, so, based on the current pleadings, there can be no implied license by acquiescence.

Finally, an essential element of an implied license by conduct or one by legal estoppel is that the plaintiff receive consideration from the defendant in exchange for the granting of the right. Tenneco Auto. Operating Co., 375 F. Supp. 2d at 384. Here, Versata has not alleged any facts suggesting that Sun received any consideration from it in exchange for the use of the '520 patent. Thus, on the current pleadings, there can be no implied license by conduct or by legal estoppel. Accordingly, because Versata has not alleged the existence of an implied license by any means, the Court will strike Versata's implied license defense. However, the Court will allow Versata leave to amend its pleading to remedy the deficiencies discussed herein.

### vi. Failure To Mark And Limitations On Damages And Costs

Finally, Sun challenges Versata's Eleventh (Failure to Mark) and Twelfth (Limitations on Damages and Costs) Defenses.

34

Versata's Eleventh Defenses alleges that "Sun is precluded from recovering, in whole or in part, the damages sought in Sun's complaint [because Sun] fail[ed] to mark and/or to require Sun's licensees to mark products that practice the '203 patent, the '092 patent, and the '520 patent, as required by 35 U.S.C. § 287." (D.I. 24 in No. 08-504-JJF at 5.)  Similarly, in its Twelfth Defense, Versata alleges that "Sun's claims for relief and prayer for damages and injunctions are barred in whole or in part by . . . the doctrine of laches, and under 35 U.S.C. §§ 286 and 287.  Sun's recovery of costs is limited under 35 U.S.C. § 288."  Versata contends that it included these defenses "to put Sun on notice and preserve Versata's rights," and that the defenses are "perfectly appropriate."  (D.I. 35 in No. 08-504-JJF at 8.)  Sun offers some case law pertaining to motions to strike generally but not to defenses under §§ 286-288 specifically.  (See D.I. 29 in 08-504-JJF at 9-10; D.I. 36 in 08-504-JJF at 8-9.)  The Court is unpersuaded that allowing Versata's Eleventh and Twelfth Defenses, as pleaded, would unfairly prejudice Sun.  Further, the Court notes that Rule 8(c) specifically requires pleading affirmative defenses based on statutes of limitations.  F. R. Civ. P. 8(c)(1).  Accordingly, the Court will not strike Versata's Eleventh Defense.  The Court will strike Versata's Twelfth Defense only insofar as it relies on the doctrine of laches, since the Court earlier concluded Versata has not

adequately pleaded laches. See supra at IV.B.1.i. The Court will not strike the remainder of Versata's Twelfth Defense.

### 2. Versata's Counterclaims

Sun contends in its Opening Brief in Support of Its Motion to Dismiss (D.I. 29 in 08-504-JJF) that "Versata bases its entire allegation that Sun's '203 and '092 patents are invalid or unenforceable on two conclusory sentences that simply claim that Sun's patents are invalid and that Sun's claims for infringement are 'barred by, inter alia, equitable estoppel, waiver, and unclean hands.' These allegations provide no facts upon which Sun can make out Versata's claims." (Id. at 8.) With respect to Versata's counterclaim involving the '520 patent, Sun similarly argues that Versata has not adequately pleaded any of its bases for unenforceability. (Id. at 4-8.)

Sun does not dispute that the portions of Versata's counterclaims alleging the invalidity of the '203, '092, or '520 patents for failure to comply with 35 U.S.C. §§ 101, 102, 103, and/or 112 are adequately pleaded. Therefore, the Court considers Sun's Motion to Dismiss Counterclaims only with respect to those portions of the Counterclaims that rely upon "inter alia, equitable estoppel, waiver, and unclean hands." (D.I. 24 in 08-504-JJF at 7-9.) Based on the parties' briefs, and for the sake of this decision, the Court will assume these paragraphs incorporate the same nine theories Versata asserts in its Fourth

through Twelfth Defenses (i.e., the Defenses Sun sought to strike). This being so, the Court concludes that Versata's Counterclaims must be dismissed, but only insofar as they rely upon the same theories as the stricken defenses: equitable estoppel, laches, waiver, and implied license. Otherwise, Versata's Counterclaims are adequately pleaded, and they withstand Sun's Motion to Dismiss.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Sun's Motion to Dismiss Defendants' Non-Patent Counterclaims (D.I. 28 in 07-782-JJF), and will grant in part and deny in part Sun's Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6) and Motion to Strike Pursuant to Rule 12(f) (D.I. 27 in 08-504-JJF).

An appropriate Order will be entered.